UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED REEVES, JR.,

    Plaintiff,

v.  Case No. 4:04-CV-125

JOHN JARAMILLO and  Hon. Gordon J. Quist
JIM JOLLEY,

    Defendants.
    _____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is before the court on defendant Jolley's motion to dismiss or for summary judgment (docket no. 14) and plaintiff's "motion in opposition" to the dispositive motion (docket no. 20).

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). "[T]o state a claim under section1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the 'Constitution and laws' of the United States, and (2) plaintiff must show that the defendant deprived him of this federal right 'under color of law.'" *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988).

Plaintiff alleges as follows:

> On or about 7-24-02, I was having an asthma attack and was in the need of my asthma inhalers at which time I requested of officer[s] Jaramillo and Jolly [sic] to bring the inhalers to me so that I could get some relief. Both officers returned to my cell holding the inhalers in their hand refusing to allow me to use them. I informed both Jaramillo and Jolly that I was in distress and needed to use the

>inhalers.  However, they refused by wiping the inhalers across their penises. Jaramillo said "the next time you use your inhaler you will be sucking [our] dicks." They then dropped the inhalers on the floor and [stomped] on them and threw them in the garbage.  I was left in distress without inhalers.  The following morning I was in distress again and the inhalers could not be found.

Plaintiff's Compl. at ¶ V.  Plaintiff seeks compensatory and punitive damages.  *Id.* at ¶ VI.

## II. Summary Judgment

Defendant Jolley has moved for summary judgment pursuant to Fed. Rules Civ. Proc. 56(b).[1] In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the court set forth the standard for deciding such a motion as follows:

>Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 2552-53, 91 L.Ed.2d 265 (1986).  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); *LaPointe*, 8 F.3d at 378.  The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  *Anderson*, 477 U.S. at 252, 106 S. Ct. 2512.

*Id.* at 478-79.  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

---

[1] Defendant Jaramillo has not yet been served with a copy of the complaint.  Because the court is dismissing plaintiff's claims against both defendants on the merits, it is unnecessary to address plaintiff's failure to serve the complaint on defendant Jaramillo.

2

### III. Eighth Amendment claim

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). It is well established that an inmate has a cause of action under 42 U.S.C. § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). To state a claim "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

A viable Eighth Amendment claim consists of an objective and a subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the infliction of serious pain. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To meet this standard, the government official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

### A. Defendants' comments

First, plaintiff alleges that defendants rubbed the inhaler across their pants and told him that "the next time you use your inhaler you will be sucking [our] dicks." This alleged conduct fails to state a constitutional claim. "Not every unpleasant experience a prisoner might endure while

3

incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Threats, verbal abuse and harassment are insufficient to state a § 1983 claim. *See Williams v. Gersbacker,* No. 93-1515, 1993 WL 430138 at *1 (6th Cir. Oct. 22, 1993); *Ivey*, 832 F.2d at 954-955. *See also Hartsfield v. Mayer,* No. 95-1411, 1996 WL 43541 *2 (6th Cir. Feb. 1, 1996) ("[a]llegations of verbal abuse and harassment by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment").

### B. Destruction of the inhaler

Next, the court rejects plaintiff's claim that defendants were deliberately indifferent to his serious medical needs when they destroyed his inhaler. In his complaint, plaintiff alleges that he was having an "asthma attack" and that defendants denied him treatment for the attack. The medical record, however, does not support plaintiff's claim that he suffered from a serious medical condition on July 24, 2002.[2]

On July 23, 2002, Dr. Telfer placed plaintiff on an inhaler restriction and prescribed him an oral medication to decrease his frequency of inhaler use. MDOC Progress Notes, attached to defendant's Brief as Exh. 6; Telfer Aff. attached to defendant's Brief as Exh. 3.[3] The doctor directed that the inhalers be placed with the corrections staff and used by plaintiff only under the direct observation and supervision of a prison officer. *Id.* Dr. Telfer changed plaintiff's treatment because plaintiff had a history of assaultive behavior and converting inhalers into shanks by flattening them. *Id.*

---

[2] *See generally, Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference").

[3] Dr. Telfer's affidavit was originally submitted in another suit filed by plaintiff, *Reeves v. Overton et al.*, 1:02-CV-949 (W.D. Mich.). That suit, which named some 40 defendants, was dismissed for failure to exhaust administrative remedies.

On July 24th, plaintiff sent a kite alleging that he was assaulted by an officer and that he had severe back pain and headaches due to broken glasses. *See* MDOC Progress Notes. Significantly, plaintiff does not mention in the kite that he suffered a serious asthma attack, that he needed an inhaler, that he had been denied an inhaler or that the guards destroyed his inhaler. *Id.* Moreover, Dr. Telfer examined plaintiff the next day, noting he moved normally and was in no distress. *Id.* The progress notes for this examination do not mention an asthma incident from the previous day, the destruction of an inhaler or a request for a new inhaler. *Id.* The doctor ordered an early refill of some medication, but this did not include an inhaler. *Id.* In subsequent MDOC progress notes for August 8, 2002, plaintiff's asthma is listed as stable and the doctor states that plaintiff had been "off inhalers x **3 wks.**" *See* MDOC progress notes attached to Reeves Affidavit (docket no. 21) (emphasis added).

Plaintiff responded to defendant's dispositive motion by filing a 54 paragraph "affidavit," which contains a variety of statements and legal arguments. *See* Reeves Aff. In this affidavit, plaintiff admitted that Dr. Telfer restricted his asthma inhalers "on or about July 23, 2002." Reeves Aff. at ¶ 2. Then, plaintiff changed the date of the incident from July 24th to July 23rd, stating that Nurse Brummette advised him of the asthma inhaler restriction on July 23rd, that about ½ hour later he experienced shortness of breath, that he requested an inhaler and that defendants destroyed it. *Id.* at ¶¶ 3-9, 31. Plaintiff stated that his asthma became worse, he requested health care but was denied, and his asthma "had gotten better by doing some slow breathing" exercises. *Id.* at ¶¶ 11-12. Plaintiff made it through the night (i.e., July 23rd), requested his inhalers the next day and was told that there were no inhalers in the guard station for him. *Id.* at ¶ 14. Plaintiff stated that "the unit #2 log book for that morning [i.e., July 24th] will show that I was pulled from my cell for a cell shake down and placed in the unit #2 day room while they tried to locate the inhalers." *Id.*

5

at ¶ 16. Plaintiff further stated that while in the unit #2 dayroom he "was able to breathe fresh air and the need for health care was not needed to aid me at that time." *Id.* at ¶ 18.[4]

Asthma can be a serious medical condition depending on the degree of the condition. *See, e.g., Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001). However, there is no evidence that plaintiff was suffering from a serious medical condition (i.e., a serious asthma attack) at this time. In his affidavit, plaintiff admits that he was suffering only from "shortness of breath" and that he resolved the situation "by doing some slow breathing." These symptoms are not sufficiently serious to implicate the Eighth Amendment. *See, e.g.*, *Bates v. Sullivan,* 6 Fed. Appx. 425, 428 (7th Cir. 2001) (allegation of shortness of breath and request for inhaler insufficient to implicate constitutional right when plaintiffs medical record make no reference to the incident); *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir.1999) (breathing problems, chest pains, dizziness, sinus problems, headaches are "not sufficiently serious to be constitutionally actionable").

For purposes of this motion, the court will view all facts in the light most favorable to plaintiff, and assume that defendants destroyed his inhaler. While such an act was wrongful and unacceptable, it did not implicate plaintiff's Eighth Amendment rights, because defendants' destruction of the inhaler did not constitute deliberate indifference to a serious medical need.

---

[4] In reaching this determination, the court is aware of discrepancies in plaintiff's claims. Plaintiff's untimely grievance listed the date of the incident as July 24, 2002. *See* Grievance attached to Compl. In *Reeves v. Overton*, *supra*, plaintiff claimed in his grievance request that the incident occurred on July 22, 2002 (a date before he was placed on the inhaler restriction). Finally, plaintiff's affidavit stated that the incident occurred on July 23, 2002. Plaintiff attempts to explain away the chronological discrepancies in the complaint, grievance, affidavit, log entries and medical records by claiming that "he just had his dates mixed up." Plaintiff's Response to defendant Jolley's Reply at 6. Plaintiff's explanation is not persuasive. For example, plaintiff states that his July 24th health care kite did not refer to the inhalers "because the issue was addressed first thing the morning of July 24, 2002 (see log book)." *Id.* at ¶ 50. Plaintiff further states that "[t]he reason that the doctors notes for July 25, 2002 do not say anything about the inhalers is because the issue was addressed on July 24, 2002 (see log book)." *Id.* at ¶ 51. However, the unit #2 log book entries do not support plaintiff's claim that "the issue" was addressed during a July 24th shake down. The log entries make no reference to an alleged cell shake-down on July 24th. *See* log book entries attached to defendant's Reply as Exh. 3. The log book entries indicate that plaintiff was escorted out of his cell for a strip search on the morning of July 25, 2002 and that his inhaler was not found. *Id.*

6

Plaintiff's use of an inhaler at that time was already restricted and he had been prescribed oral medication for his asthma instead.  Nor was plaintiff suffering from a serious medical condition at the time of the incident.  Plaintiff experienced shortness of breath and he self-treated the condition.  There is no medical record of plaintiff suffering a serious asthma attack on July 24th, or, for that matter, on July 22nd or 23rd.  Finally, plaintiff's medical records do not reflect that he suffered a serious medical condition when he visited Dr. Telfer on July 25th.  Accordingly, defendant Jolley's motion to dismiss or for summary judgment will be granted with respect to plaintiff's claims as to both defendants.

## Conclusion

For the reasons set forth above, defendant Jolley's motion to dismiss or for summary judgment (docket no. 14) will be **GRANTED** as to all defendants. Plaintiff's motion in opposition (docket no. 20) will be **DENIED**.  A judgment order consistent with this opinion will be entered.


Dated:  September 8, 2005                         /s/ Gordon J. Quist
                                                                               GORDON J. QUIST
                                                         UNITED STATES DISTRICT JUDGE